# Exhibit "A"

PROMISSORY NOTE A

$3,695,000.00                                                                                          April 7, 2005

   FOR VALUE RECEIVED **CROSSWOODS COMMONS SHOPPING CENTER COLUMBUS, OH. LIMITED PARTNERSHIP,** a Delaware limited partnership, as maker, having its principal place of business at 270 Commerce Drive, Rochester, New York 14623 ("Borrower"), hereby unconditionally promises to pay to the order of **LEHMAN BROTHERS BANK, FSB,** a federal stock savings bank, having an address at 1000 West Street, Suite 200, Wilmington, Delaware 19801 ("Lender"), or at such other place as the holder hereof may from time to time designate in writing, the principal sum of THREE MILLION SIX HUNDRED NINETY FIVE THOUSAND AND 00/100 DOLLARS ($3,695,000.00), in lawful money of the United States of America with interest thereon to be computed from the date of this Note at the Applicable Interest Rate (defined below), and to be paid in installments as provided herein.

**1. CERTAIN DEFINED TERMS**

   As used herein the following terms shall have the meanings set forth below:

   (a) "Accrual Period" means the period commencing on the eleventh (11th) day of a calendar month and ending on the tenth (10th) day of the succeeding calendar month; provided that if this Note is dated as of any date other than the eleventh (11th) day of a month, the first Accrual Period shall (i) consist of only the date hereof, if the date hereof is the tenth (10th) day of a month, or (ii) commence on the date hereof and shall end on the next tenth (10th) day of a calendar month to occur after the date hereof.

   (b) "Applicable Interest Rate" shall mean an interest rate equal to 5.88% per annum.

   (c) "Constant Monthly Payment" shall mean a payment equal to $21,869.13.

   (d) "IO Monthly Payment" is defined in Section 2(a).

   (e) "Loan" shall mean the loan evidenced by this Note.

   (f) "Loan Documents" shall mean this Note, the Security Instrument, and any other documents or instruments which now or shall hereafter wholly or partially secure or guarantee payment of this Note or which have otherwise been executed by Borrower and/or any other person in connection with the Loan.

   (g) "Lockout Period Expiration Date" shall mean the second (2nd) anniversary of the first Monthly Payment Date.

   (h) "Maturity Date" shall mean April 11, 2020.

   (i) "Monthly Payment" means the Constant Monthly Payment or the IO Monthly Payment (as hereinafter defined), as applicable.

   (j) "Monthly Payment Date" shall mean the eleventh (11th) day of each calendar month prior to the Maturity Date commencing on (i) the eleventh (11th) day of the next succeeding calendar month after the date hereof if this Note is dated on or prior to the eleventh (11th) day of a month, or (ii) the eleventh (11th) day of the second succeeding calendar month after the date hereof if this Note is dated after the eleventh (11th) day of a month.

SSL-DOCS1 1537915v1

(k) "Security Instrument" shall mean the Open-End Mortgage and Security Agreement dated the date hereof in the aggregate principal sum of THREE MILLION NINE HUNDRED TWENTY FIVE THOUSAND AND 00/100 DOLLARS ($3,925,000.00) given by Borrower to (or for the benefit of) Lender covering the fee estate of Borrower in certain premises located in the County of Franklin, State of Ohio, and other property, as more particularly described therein (collectively, the "Property").

2. **PAYMENT TERMS**

(a) If this Note is dated as of a date other than the eleventh (11th) day of a calendar month, a payment shall be due from Borrower to Lender on the date hereof on account of all interest scheduled to accrue on the principal sum from and after the date hereof through and including the last day of the current Accrual Period. On each Monthly Payment Date occurring after the date hereof through and including the Monthly Payment Date occurring in April 2010, all interest which has accrued at the Applicable Interest Rate during the preceding Accrual Period shall be due from Borrower to Lender (the "IO Monthly Payment"). Commencing on the Monthly Payment Date occurring in May 2010, and on each Monthly Payment Date thereafter, the Constant Monthly Payment shall be due from Borrower to Lender, with each Constant Monthly Payment to be applied as follows: (i) first, to the payment of the interest which has accrued during the preceding Accrual Period computed at the Applicable Interest Rate, and (ii) the balance toward the reduction of the principal sum.

(b) The balance of the principal sum and all interest thereon shall be due and payable on the Maturity Date.

(c) Interest on the principal sum of this Note shall be calculated by multiplying the actual number of days elapsed in the period for which interest is being calculated by a daily rate based on a 360-day year.

(d) Unless payments are made in the required amount in immediately available funds at the place where this Note is payable, remittances in payment of all or any part of the Debt (defined below) shall not, regardless of any receipt or credit issued therefor, constitute payment until the required amount is actually received by Lender in funds immediately available at the place where this Note is payable (or any other place as Lender, in Lender's sole discretion, may have established by delivery of written notice thereof to Borrower) and shall be made and accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks.

3. **DEFAULT AND ACCELERATION**

(a) The whole of the principal sum of this Note, (b) interest, default interest, late charges and other sums, as provided in this Note, the Security Instrument or the other Loan Documents, (c) all other monies agreed or provided to be paid by Borrower in this Note, the Security Instrument or the other Loan Documents, (d) all sums advanced pursuant to the Security Instrument to protect and preserve the Property and the lien and the security interest created thereby, and (e) all sums advanced and costs and expenses incurred by Lender in connection with the Debt (defined below) or any part thereof, any renewal, extension, or change of or substitution for the Debt or any part thereof, or the acquisition or perfection of the security therefor, whether made or incurred at the request of Borrower or Lender (all the sums referred to in (a) through (e) above shall collectively be referred to as the "Debt") shall without notice become immediately due and payable at the option of Lender if any payment required in this Note prior to the Maturity Date is not paid on the date when due or on the happening of any other default, after the expiration of any applicable notice and grace periods herein or under the terms of the Security Instrument or any of the other Loan Documents (collectively, an "Event of Default").

-2-

Notwithstanding anything to the contrary contained herein, with respect to only Borrower's first two failures in any calendar year to make a Monthly Payment within the time required under this Note, no Event of Default shall be deemed to have occurred unless Borrower fails to make payment on or before the date that is five (5) days after Lender delivers written notice of the Borrower's breach to Borrower.

4.  **DEFAULT INTEREST**

Borrower does hereby agree that upon the occurrence of an Event of Default, Lender shall be entitled to receive and Borrower shall pay interest on the entire unpaid principal sum at a rate (the "Default Rate") equal to (i) the greater of (a) the Applicable Interest Rate plus three percent (3%) and (b) the Prime Rate (as hereinafter defined) plus four percent (4%) or (ii) the maximum interest rate that Borrower may by law pay, whichever is lower. The Default Rate shall be computed from the occurrence of the Event of Default until the earlier of the date upon which the Event of Default is cured or the date upon which the Debt is paid in full. Interest calculated at the Default Rate shall be added to the Debt, and shall be deemed secured by the Security Instrument. This provision, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

The "Prime Rate" shall mean the annual rate of interest publicly announced by Citibank, N.A. in New York, New York, as its base rate, as such rate shall change from time to time. If Citibank, N.A. ceases to announce a base rate, Prime Rate shall mean the rate of interest published in The Wall Street Journal from time to time as the Prime Rate. If more than one Prime Rate is published in The Wall Street Journal for a day, the average of the Prime Rates shall be used, and such average shall be rounded up to the nearest one-quarter of one percent (.25%). If The Wall Street Journal ceases to publish the "Prime Rate", the Lender shall select an equivalent publication that publishes such "Prime Rate", and if such prime rates are no longer generally published or are limited, regulated or administered by a governmental or quasi-governmental body, then Lender shall select a comparable interest rate index.

5.  **PREPAYMENT**

Borrower shall not have the right or privilege to prepay all or any portion of the unpaid principal balance of this Note until the Lockout Period Expiration Date. From and after the Lockout Period Expiration Date, provided no Event of Default exists, the principal balance of this Note may be prepaid, in whole but not in part, upon: (i) not less than 30 days and not more than 60 days prior written notice (the "Prepayment Notice") to Lender specifying the scheduled payment date on which prepayment is to be made (the "Prepayment Date"); (ii) payment of all accrued and unpaid interest on the outstanding principal balance of this Note to and including the Prepayment Date together with a payment of all interest which would have accrued on the principal balance of this Note to and including the last day of the Accrual Period in which the Prepayment Date occurs, if such prepayment occurs on a date which is not the eleventh (11th) day of a calendar month (the "Shortfall Interest Payment"); (iii) payment of all other sums then due under this Note, the Security Instrument and the other Loan Documents and (iv) if the Prepayment Date occurs prior to the Monthly Payment Date which is one year prior to the Maturity Date, payment of a prepayment consideration (the "Prepayment Consideration") in an amount equal to the greater of: (A) one (1%) percent of the principal amount of this Note being prepaid; and (B) the present value of a series of payments each equal to the Payment Differential (hereinafter defined) and payable on each Monthly Payment Date over the remaining original term of this Note and on the Maturity Date discounted at the Reinvestment Yield (hereinafter defined) for the number of months remaining from the Prepayment Date to each such Monthly Payment Date and the Maturity Date. The term "Reinvestment Yield" as used herein shall be equal to the lesser of (a) the (i) yield on the U.S. Treasury issue (primary issue) with the same maturity date as the Maturity Date; or (ii) if no such U.S. Treasury issue is available, then the interpolated yield on the two U.S. Treasury issues (primary issues) with maturity dates (one prior

-3-

to and one following) that are closest to the Maturity Date, or (b) the (i) yield on the U.S. Treasury issue (primary issue) with a term equal to the remaining average life of the Debt; or (ii) if no such U.S. Treasury issue is available, then the interpolated yield on the two U.S. Treasury issues (primary issues) with terms (one prior to and one following) that are closest to the remaining average life of the Debt, with each such yield being based on the bid price for such issue as published in The Wall Street Journal on the date that is 14 days prior to the Prepayment Date set forth in the Prepayment Notice (or, if such bid price is not published on that date, the next preceding date on which such bid price is so published) and converted to a monthly compounded nominal yield. The term "Payment Differential" as used herein shall be equal to (x) the Applicable Interest Rate minus the Reinvestment Yield, divided by (y) 12 and multiplied by (z) the principal sum outstanding on such Prepayment Date after application of the Monthly Payment (if any) due on such Prepayment Date, provided that the Payment Differential shall in no event be less than zero. In no event, however, shall Lender be required to reinvest any prepayment proceeds in U.S. Treasury obligations or otherwise. Lender shall notify Borrower of the amount, and the basis of determination, of the required Prepayment Consideration. If a Prepayment Notice is given by Borrower to Lender pursuant to this Article 5, the principal balance of this Note and the other sums required under this Article shall be due and payable on the Prepayment Date, provided, however, that a Prepayment Notice may be revoked by written notice of revocation given to Lender on or prior to the Prepayment Date; it being agreed that, in the event Borrower shall elect to revoke such Prepayment Notice, Borrower shall be responsible for all costs and expenses incurred by Lender and Lender's agents in connection with Borrower's failure to prepay all or any portion of the unpaid principal balance of this Note.

Lender shall not be obligated to accept any prepayment of the principal balance of this Note unless it is accompanied by all sums due in connection therewith.

Simultaneously with each Default Repayment that occurs prior to the date which is one year prior to the Maturity Date, Borrower shall pay to Lender the entire Debt, including, without limitation, the Prepayment Consideration. For the purposes of calculating the Prepayment Consideration payable in connection with a Default Repayment (i) the "Prepayment Date" used to calculate the "Reinvestment Yield" shall, at Lender's election, be the date of the Default Repayment or the preceding Business Day and (ii) the amount in clause (z) of the definition of "Payment Differential" shall be the principal amount being prepaid in connection with such Default Repayment.

For purposes of this Note, the term "Default Repayment" shall mean a repayment of all or any portion of the principal amount of this Note made during the continuance of any Event of Default or after an acceleration of the Maturity Date under any circumstances, including, without limitation, a repayment occurring in connection with reinstatement of the Security Instrument provided by statute under foreclosure proceedings or exercise of a power of sale, any statutory right of redemption exercised by Borrower or any other party having a statutory right to redeem or prevent foreclosure, any sale in foreclosure or under exercise of a power of sale or otherwise.

6. **SECURITY**

This Note is secured by the Security Instrument and the other Loan Documents. The Security Instrument is intended to be duly recorded in the public records of the county where the Property is located. All of the terms, covenants and conditions contained in the Security Instrument and the other Loan Documents are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein.

7. **SAVINGS CLAUSE**

This Note is subject to the express condition that at no time shall Borrower be obligated or required to pay interest on the principal balance due hereunder at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the maximum interest rate which Borrower is permitted by applicable law to contract or agree to pay. If by the terms of this Note, Borrower is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of such maximum rate, the Applicable Interest Rate or the Default Rate, as the case may be, shall be deemed to be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the Debt, shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Note until payment in full so that the rate or amount of interest on account of the Debt does not exceed the maximum lawful rate of interest from time to time in effect and applicable to the Debt for so long as the Debt is outstanding.

## 8. LATE CHARGE

If any sum payable under this Note is not paid on the date on which it is due, regardless of whether such failure shall constitute an Event of Default, Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of the unpaid sum or the maximum amount permitted by applicable law to defray the expenses incurred by Lender in handling and processing the delinquent payment and to compensate Lender for the loss of the use of the delinquent payment and the amount shall be secured by the Security Instrument and the other Loan Documents.

## 9. NO ORAL CHANGE

This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

## 10. JOINT AND SEVERAL LIABILITY

If Borrower consists of more than one person or party, the obligations and liabilities of each person or party shall be joint and several.

## 11. WAIVERS, ETC.

All payments required hereunder shall be made irrespective of, and without any deduction for, any setoff, defense or counterclaim. Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, notice of intent to accelerate, notice of acceleration, protest and notice of protest and non-payment and all other notices of any kind, other than notices specifically required by the terms of this Note, the Security Instrument and the other Loan Documents. No release of any security for the Debt or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Security Instrument or the other Loan Documents made by agreement between Lender or any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other person or entity who may become liable for the payment of all or any part of the Debt, under this Note, the Security Instrument or the other Loan Documents. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Lender to take further action without further notice or demand as provided for in this Note, the Security Instrument or the other Loan Documents. In addition, acceptance

by Lender of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be an Event of Default. If Borrower is a partnership, the agreements herein contained shall remain in force and applicable, notwithstanding any changes in the individuals comprising the partnership, and the term "Borrower," as used herein, shall include any alternate or successor partnership, but any predecessor partnership and their partners shall not thereby be released from any liability. If Borrower is a corporation or limited liability company, the agreements contained herein shall remain in full force and applicable notwithstanding any changes in the shareholders or members comprising, or the officers and directors or managers relating to, the corporation or limited liability company, and the term "Borrower" as used herein, shall include any alternative or successor corporation or limited liability company, but any predecessor corporation or limited liability company shall not be relieved of liability hereunder. (Nothing in the foregoing sentence shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in a partnership, corporation or limited liability company which may be set forth in the Security Instrument or any other Loan Document.)

12. **TRANSFER**

Upon the transfer of this Note, Borrower hereby waiving notice of any such transfer, Lender may deliver all the collateral mortgaged, granted, pledged or assigned pursuant to the Security Instrument and the other Loan Documents, or any part thereof, to the transferee who shall thereupon become vested with all the rights herein or under applicable law given to Lender with respect thereto, and Lender shall thereafter forever be relieved and fully discharged from any liability or responsibility accruing thereafter in the matter; but Lender shall retain all rights hereby given to it with respect to any liabilities and the collateral not so transferred.

13. **WAIVER OF TRIAL BY JURY**

**BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN, THE APPLICATION FOR THE LOAN, THIS NOTE, THE SECURITY INSTRUMENT OR THE OTHER LOAN DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.**

14. **EXCULPATION**

(a) Except as otherwise provided herein, in the Security Instrument or in the other Loan Documents, Lender shall not enforce the liability and obligation of Borrower to perform and observe the obligations contained in this Note or the Security Instrument by any action or proceeding wherein a money judgment shall be sought against Borrower, except that Lender may sell the Property under any power of sale or right of non-judicial foreclosure or bring a foreclosure action, confirmation action, action for specific performance or other appropriate action or proceeding to enable Lender to enforce and realize upon this Note, the Security Instrument, the other Loan Documents, and the interest in the Property, the Rents (as defined in the Security Instrument) and any other collateral given to Lender created by this Note, the Security Instrument and the other Loan Documents; provided, however, that any judgment in any such action or proceeding shall be enforceable against Borrower only to the extent of Borrower's interest in the Property, in the Rents and in any other collateral given to Lender. Lender, by accepting this Note and the Security Instrument, agrees that it shall not, except as otherwise provided in Section 10.10 of the Security Instrument, sue for, seek or demand any deficiency judgment against Borrower in any such action or proceeding, under or by reason of or under or in connection with this Note, the other Loan

Documents or the Security Instrument. The provisions of this Article shall not, however, (i) constitute a waiver, release or impairment of any obligation evidenced or secured by this Note, the other Loan Documents or the Security Instrument; (ii) Intentionally deleted; (iii) impair the right of Lender to name Borrower as a party defendant in any action or suit for judicial foreclosure and sale under the Security Instrument; (iv) affect the validity or enforceability of any indemnity, guaranty, master lease or similar instrument made in connection with this Note, the Security Instrument, or the other Loan Documents; (v) impair the right of Lender to obtain the appointment of a receiver; (vi) impair the enforcement of the Assignment of Leases and Rents executed in connection herewith; (vii) impair the right of Lender to obtain a deficiency judgment or judgment on the Note against Borrower if necessary to obtain any insurance proceeds or condemnation awards to which Lender would otherwise be entitled under the Security Instrument; provided however, Lender shall only enforce such judgment against the insurance proceeds and/or condemnation awards; or (viii) impair the right of Lender to enforce the provisions of Sections 10.10, 11.2 and 11.3 of the Security Instrument.

(b)     Notwithstanding the provisions of this Article 14 to the contrary, Borrower shall be personally liable to Lender for the Losses (as defined in the Security Instrument) it incurs due to: (i) fraud or intentional misrepresentation by Borrower, its agents or principals in connection with the execution and the delivery of this Note, the Security Instrument or the other Loan Documents, (ii) Borrower's misapplication or misappropriation of (A) Rents received by Borrower after the occurrence of an Event of Default, (B) tenant security deposits or Rents collected more than one (1) month in advance, or (C) insurance proceeds or condemnation awards relating to the Property, (iii) Borrower's failure to comply with the provisions of Section 16.1 of the Security Instrument, (iv) Borrower's or any other Indemnitor's failure to comply with the provisions of the Environmental Indemnity (as defined in the Security Instrument), or (v) Borrower's default under Sections 4.2 or 8.2 of the Security Instrument.

(c)     Notwithstanding the foregoing, the agreement of Lender not to pursue recourse liability as set forth in Subsection (a) above SHALL BECOME NULL AND VOID and shall be of no further force and effect if the Property or any part thereof shall become an asset in (1) a voluntary bankruptcy or insolvency proceeding, or (2) an involuntary bankruptcy or insolvency proceeding against Borrower (A) which is commenced by any party controlling, controlled by or under common control with Borrower (which shall include, but not be limited to, any creditor or claimant acting in concert with Borrower or any of the foregoing parties) (the "Borrowing Group") or (B) in which any member of the Borrowing Group objects to a motion by Lender for relief from any stay or injunction from the foreclosure of the Security Instrument or any other remedial action permitted hereunder or under the Security Instrument or the other Loan Documents.

(d)     Nothing herein shall be deemed to be a waiver of any right which Lender may have under Sections 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Debt or to require that all collateral shall continue to secure all of the Debt owing to Lender in accordance with this Note, the Security Instrument and the other Loan Documents.

15.     **AUTHORITY**

Borrower (and the undersigned representative of Borrower, if any) represents that Borrower has full power, authority and legal right to execute and deliver this Note, the Security Instrument and the other Loan Documents and that this Note, the Security Instrument and the other Loan Documents constitute valid and binding obligations of Borrower.

16.     **APPLICABLE LAW**

This Note shall be governed, construed, applied and enforced in accordance with the laws of the state in which the Property is located and the applicable laws of the United States of America.

**17. COUNSEL FEES**

In the event that it should become necessary to employ counsel to collect the Debt or to protect or foreclose the security therefor, Borrower also agrees to pay all reasonable fees and expenses of Lender, including, without limitation, reasonable attorneys' fees for the services of such counsel whether or not suit be brought.

**18. NOTICES**

All notices or other written communications hereunder shall be deemed to have been properly given (i) upon delivery, if delivered in person, (ii) one (1) Business Day (defined below) after having been deposited for overnight delivery with any reputable overnight courier service, or (iii) three (3) Business Days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

| | |
|---|---|
| If to Borrower: | CROSSWOODS COMMONS SHOPPING CENTER COLUMBUS, OH. LIMITED PARTNERSHIP<br>270 Commerce Drive<br>Rochester, NY 14623<br>Attention:   William Sondericker |
| With a copy to: | Woods, Oviatt, Gilman LLP<br>700 Crossroads Building<br>2 State Street<br>Rochester, NY 14614<br>Attention:   Mitchell Nusbaum, Esq. |
| If to Lender: | Lehman Brothers Bank, FSB<br>399 Park Avenue, 8th Floor<br>New York, New York 10022<br>Attention:   John Herman |
| With a copy to: | Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York  10038-4982<br>Attention:   William Campbell, Esq. |

or addressed as such party may from time to time designate by written notice to the other parties.

Either party by notice to the other may designate additional or different addresses for subsequent notices or communications.

"Business Day" shall mean a day upon which commercial banks are not authorized or required by law to close in New York, New York.

**19. MISCELLANEOUS**

-8-

SSL-DOCS1 1537915v1

(a) Wherever pursuant to this Note (i) Lender exercises any right given to it to approve or disapprove, (ii) any arrangement or term is to be satisfactory to Lender, or (iii) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole and absolute discretion of Lender and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

(b) Whenever used, the singular shall include the plural, the plural shall include the singular, and the words "Lender" and "Borrower" shall include their respective successors, assigns, heirs, executors and administrators.

(c) Borrower hereby represents and warrants that the Loan secured by the Security Instrument was made and transacted solely for the purpose of carrying on business or investment activity, and that the proceeds of the Loan were not used for personal, family or household purposes.

**20. INTENTIONALLY DELETED**

**21. CROSS-DEFAULT; OTHER PROVISIONS REGARDING THIS NOTE AND NOTE B**

(a) Concurrently with the execution of this Note, Borrower has executed and delivered to Lender that certain Promissory Note B ("Note B") dated of even date herewith, payable to the order of Lehman Brothers Bank, FSB evidencing a loan ("Loan B") in the original principal amount of $230,000.00. Lender has been engaged as Collateral Agent ("Collateral Agent") by Lender and the holder of Note B to administer the documents and collateral securing this Note and Note B, including, without limitation, the Property. Note B and the right of the holder of Loan B to receive payments of interest, principal and other amounts with respect to Loan B shall at all times be junior, subject and subordinate to the Loan and the right of the holder of this Note to receive payments of interest, principal and other amounts with respect to the Loan, including after acceleration.

(b) Loan B and Note B will be cross-defaulted with this Note and the Loan.

(c) An Event of Default under either Note B or this Note or any of the other Loan Documents delivered in connection with either Loan B or the Loan shall, at Lender's option, constitute an Event of Default under Note B, this Note and the other Loan Documents, as elected by Lender in its sole and absolute discretion. Following an Event of Default and without waiving any of Lender's other rights and remedies under the Loan Documents or otherwise at law or in equity, Lender in its sole discretion (subject to agreement between the holder of Note B and the holder of this Note) may allocate payments made under this Loan to amounts due and payable under Loan B, the Loan or under both Loan B and the Loan.

(d) The Security Instrument and each of the Loan Documents shall also secure the obligations of Borrower under Note B, this Note and the other Loan Documents and shall be for the benefit of Lender, the holder of Note B and the holder of this Note and their respective successors and assigns.

(e) It shall be an additional condition to the prepayment of this Note and/or release of the lien of the Security Instrument in accordance with Article 5 hereof that Note B shall have been simultaneously prepaid in accordance with Article 5 thereof.

(f) Borrower shall make separate monthly payments of principal and interest under the notes evidencing Loan B and the Loan, as directed by the holder of Note B and the holder of this Note, or if

-9-

directed by Lender, Borrower shall make a single monthly payment to Lender consisting of the aggregate monthly payment of principal and interest under both notes.

IN WITNESS WHEREOF, Borrower has duly executed this Note as of the day and year first above written.

                **CROSSWOODS COMMONS SHOPPING CENTER COLUMBUS, OH. LIMITED PARTNERSHIP,**
                a Delaware limited partnership

            By:   CROSSWOODS COMMONS SHOPPING CENTER COLUMBUS, OH. GENERAL PARTNER CORPORATION,
                   a Delaware corporation,
                   its general partner

                   By: _____
                          Name: William Sondericker
                          Title: Vice President

**ACKNOWLEDGEMENT**

STATE OF NEW YORK

COUNTY OF MONROE

The foregoing instrument was acknowledged before me this 4th day of April, 2005, by William Sondericker, the Vice President of CROSSWOODS COMMONS SHOPPING CENTER COLUMBUS, OH. GENERAL PARTNER CORPORATION, a Delaware corporation, the general partner of CROSSWOODS COMMONS SHOPPING CENTER COLUMBUS, OH. LIMITED PARTNERSHIP, a Delaware limited partnership, on behalf of said partnership.

*Roseann Welch*
Notary Public
Printed Name: Roseann Welch

My Commission Expires:
8/2/05

ROSEANN WELCH
Notary Public, State of New York
Monroe County, #01WE5015859
Commission Expires Aug. 2, 2005

SSL-DOCS1 1537915v1